**BAKER BOTTS L.L.P.**
Wayne O. Stacy (SBN 314579)
wayne.stacy@bakerbotts.com
Sarah Guske (SBN 232467)
sarah.guske@bakerbotts.com
Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile:  (415) 291-6300

Kurt M. Pankratz (*pro hac vice*)
kurt.pankratz@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
Telephone: (214) 953-6584
Facsimile: (214) 661-4584

Amy K. Liang (SBN 291910)
amy.liang@bakerbotts.com
Jake W. Gallau (SBN 319656)
jake.gallau@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile:  (650) 739-7699

Attorneys for Plaintiff
ORCINUS HOLDINGS, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ORCINUS HOLDINGS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SYNCHRONOSS TECHNOLOGIES, INC., <br><br> Defendant. | Case No. <br><br> **PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Orcinus Holdings, LLC ("Orcinus" or "Plaintiff") files this complaint for patent infringement against Defendant Synchronoss Technologies, Inc. ("Synchronoss" or "Defendant") and in support thereof alleges as follows:

**THE PARTIES**

1. Orcinus Holdings, LLC, a wholly-owned subsidiary of Dropbox Inc. ("Dropbox"), is corporation organized under the laws of the State of Delaware, with a principal place of business at 333 Brannan Street, San Francisco, California.

2. On information and belief, Synchronoss Technologies, Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business at 200 Crossing Boulevard, 8th Floor, Bridgewater, New Jersey.

**JURISDICTION AND VENUE**

3. This is an action for patent infringement arising under the Patent Laws of the United States of America, Title 35, United States Code.

4. This Court has subject-matter jurisdiction over Orcinus's claims under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Synchronoss. Synchronoss has continuous and systematic business contact with the State of California and has committed acts of patent infringement within the Northern District of California. For example, Synchronoss's offices are located at 60 South Market Street in San Jose, California. In addition, Synchronoss regularly conducts business in California and attempts to derive benefit from residents of the State of California by offering infringing products, such as the Synchronoss Personal Cloud, in the Northern District of California.

6. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b). Synchronoss resides in the Northern District of California, and Synchronoss has committed acts of infringement in this District and has a regular and established place of business in this District. Synchronoss conducts business from its permanent physical location located in the Northern District of California at 60 South Market Street, San Jose, California. On information

and belief, at least 36 employees are employed at this Synchronoss location, including employees responsible for engineering, marketing, customer support, and product development. As described herein, Synchronoss offers infringing products, including the Personal Cloud product in the Northern District of California.

**THE PATENT-IN-SUIT**

7. U.S. Patent No. 7,567,541 ("the '541 Patent"), titled "System and Method for Personal Data Backup for Mobile Customer Premises Equipment," was issued by the United States Patent and Trademark Office ("USPTO") on Jul. 28, 2009. Orcinus is the owner by assignment of the entire right, title and interest in and to the '541 Patent, including the sole and undivided right to sue for infringement. A true and correct copy of the '541 Patent is attached hereto as Exhibit A.

8. The '541 Patent is referred to herein as the Patent-in-Suit.

**BACKGROUND OF THE DISPUTE**

**Dropbox Is a Pioneer in Syncing, Sharing, and Backup of User Data**

9. Dropbox was founded in June 2007 by Drew Houston and Arash Ferdowsi. It launched in September 2008 as a simple way for people to access their files wherever they are and share them easily. The simplicity of the product combined with the reliability of the sync led consumers to bring Dropbox to work to empower collaboration. Over 300,000 teams have adopted Dropbox Business, and there are over 500 million registered Dropbox users around the world.

10. Dropbox's global collaboration platform is a market leader where users create, access, and share content. Underlying Dropbox's success is its tremendous investment in research and development, including in the areas of data backup and transfer. Through these efforts, Dropbox has obtained valuable intellectual property in these areas.

**Orcinus Is a Wholly-Owned Subsidiary of Dropbox**

11. Orcinus Holdings, LLC was formed in 2015 by Dropbox.

12. Orcinus was formed with Dropbox as the sole Member of the LLC.

13. Orcinus is a wholly-owned subsidiary of Dropbox.

14. Dropbox founders Drew Houston and Arash Ferdowski manage and control Orcinus.

### Synchronoss's Infringing Cloud Products

15. Synchronoss was founded in 2000 by Stephen G. Waldis but is a relative newcomer to consumer cloud backup, launching its Personal Cloud product more than a decade later.

16. Synchronoss sells its Personal Cloud product as a white-label data backup and transfer solution to network operators or service providers, such as Verizon.

17. Synchronoss has gained momentum in the marketplace through unlawful use of the technology claimed in the Patent-in-Suit.

18. On information and belief, Synchronoss's Cloud products, including without limitation its Personal Cloud product, infringes the Patent-in-Suit, as described in more detail below.

### PATENT INFRINGEMENT CLAIMS

### Count I – Infringement of U.S. Patent No. 7,567,541

19. Orcinus incorporates by reference the allegations in Paragraphs 1 through 18 above.

20. The '541 Patent was filed on April 20, 2006 and claims priority to U.S. provisional application No. 60/620,543, filed October 20, 2004.

21. At the time that the '541 Patent was filed, several technological shortcomings existed that made data backup and restoration burdensome for users of mobile customer premises equipment ("CPE") such as cell phones. *See* Ex. A ('541 Patent) at 1:30–60. Those shortcomings stem from the absence of a flexible system for backing up data from one device such that it could later be easily transmitted back to the same or another device. Then-existing methods for transferring data included manual entry of each address, contact, calendar event, etc., or the transfer of data directly from one device to another using a cradle. Manual entry bears the disadvantage of being extremely time intensive. *Id.* at 1:30–34. A specialized cradle, meanwhile, suffers from disadvantages including data backup or transfer only occurring when

the user has all of the required equipment (a first device, a cradle, and, in the case of transfer, a second device) at the same physical location at the same time. *Id.* at 1:42–48. Additionally, the necessary cradles were not widely available, and transfers or backups usually needed to be performed in-store by an authorized technician. *Id.* at 1:49–52. Other general problems, not directly associated with manual entry or specialized cradles, also prevented effective data backup and transfer, including device incompatibility preventing data transfer and irreparable loss of data due to the destruction of a device. *Id.* at 1:49–56.

22. Recognizing the deficiencies associated with existing approaches to data backup and transfer, the '541 Patent describes specific and discrete implementations to flexibly back up data stored on customer premises equipment such as mobile phones. These methods were significant improvements over prior approaches to data backup in that they provided improved accessibility to users who wanted to backup or transfer data to/from their devices without professional support or the need to travel to a store with the necessary specialized cradle. Further, these methods and systems include a novel approach to data formatting that allows for the transfer of data from a device of one make, model, and ecosystem to another device of a different make, model, and ecosystem. *See, e.g.*, *id.* at 1:56–59. This approach to formatting data also allows for the backup or transfer of only certain types of data including only that data that has changed since a previous data backup. *See, e.g.*, *id.* at 2:11–33, 2:60–3:34.

23. The '541 Patent describes and claims a number of novel and inventive approaches to data backup. These inventive approaches are captured in independent Claims 1, 11, 17, 21, and their respective dependent claims. The claimed approaches are tied to computers and cannot be performed by a human alone. Claim 1, for example, recites "[a] method for backing up data stored on a mobile customer premises equipment" comprising "storing data at the mobile customer premises equipment;" "formatting the data . . . into fields by determining data fields, identifying which portions of said data correspond to a respective data field, and tagging said data;" "transmitting the data with a user ID . . . to a server for storage;" "retrieving said data . . . in response to one of an expiration of time and request;" and "transmitting the data

in more than one information signal and sequentially numbering each of said information signals."

24. Claim 11 recites "[a] method for backing up data stored on a mobile customer premises equipment" comprising "formatting the data at the mobile customer premises equipment into fields;" "transmitting only the changes in data which have occurred since a previous transmission;" "transmitting only the changes in the data with a user ID . . . to a server for storage, by transmitting the data in more than one information signal across the mobile network and sequentially numbering each of said information signals, in response to one of an expiration of time, request from said server, and change in status of data at said mobile customer premises equipment;" and "said server storing said data for retrieval and transmitting said data to the mobile premises equipment."

25. Claim 17, meanwhile, recites "[a] system for backing up data on a mobile customer premises equipment" comprising "a mobile customer premises equipment . . . storing data thereon, the data being formatted into fields, and selectively sending a request for the data;" and "a server in communication with said mobile customer premises equipment across a mobile network and storing said data, said mobile customer premises equipment transmitting the data with a user ID to said server in more than one information signal and sequentially numbering each of said information signals, said server storing said data for retrieval by determining data fields, identifying which portions of said data correspond to a respective data field, and tagging said data, said data being retrieved from said server in response to one of an expiration of time and requests from said mobile customer premises equipment, said server transmitting said data to said mobile customer premises equipment."

26. Claim 21, meanwhile, recites "[a] system for backing up data on a mobile customer premises equipment" comprising "a mobile customer premises equipment storing data thereon, the data being formatted into fields, and selectively transmitting said data with a user ID;" and "a server in communication with said mobile customer premises equipment across a mobile network and storing said data for retrieval by said mobile customer premises equipment, said server storing said data in response to transmission of said data from said mobile customer

premises equipment, said mobile customer premises equipment transmitting only the changes in data which have occurred since a previous transmission to said server in response to one of an expiration of time and request from said server by transmitting the change in data in more than one information signal across a mobile network, and sequentially numbering each of said information signals."

27. These claim elements, individually or in combination, are unconventional, and nothing in the specification describes these concepts as well-understood, routine, or conventional. To the contrary, as explained previously, the claimed concepts solve problems of the prior art described in the patent and provide advantages and improvements to data backup and transfer that was unknown in the field before the invention of the '541 Patent. *See, e.g.,* Ex. A at 1:19–60, 2:11–33, 2:60–3:34. Unlike conventional approaches to data backup and transfer, the inventions described and claimed in the '541 Patent require specific formatting and transmission parameters that, when used in combination with other claim elements, improve data backup and transfer in unconventional ways. *See id*. For example, as previously described, prior to the invention of the '541 Patent, existing data backup and transfer methods included manual entry of each address, contact, calendar event, etc., or the transfer of data directly from one device to another using a cradle. *Id.* at 1:19–60. The inventions described and claimed in the '541 Patent solved these problems and improved data backup and transfer technology when implemented. *Id*. at 2:11–33, 2:60–3:34.

28. The solutions described and claimed in the '541 Patent represented a significant advance over existing approaches and were not well-known, routine, or conventional in the field at the time the application leading to the '541 Patent was filed. *See id*. at 1:19–60, 2:11–33, 2:60–3:34. During examination of the application that ultimately issued as the '541 Patent, the patent examiner at the United States Patent and Trademark Office ("USPTO") considered multiple U.S. patent documents. *See* Ex. A at Cover Page. These include references describing solutions from Panasonic, Nokia, Sony, and NTT Docomo, amongst others. The patent examiner determined that none disclosed or rendered obvious the inventions of the '541 Patent.

29. Synchronoss directly infringed and continues to directly infringe one or more claims of the '541 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, and selling the Synchronoss Personal Cloud. Non-limiting examples of such infringement are provided below, based on the information currently available to Orcinus.

30. Synchronoss's Personal Cloud, for example, satisfies each and every limitation of Claim 1 of the '541 Patent.

31. Synchronoss's Personal Cloud is accessible via a mobile application, a desktop application running on a personal computer, and a website accessed using a web browser running on a personal computer.

32. Synchronoss's Personal Cloud performs a method for backing up data stored on a mobile customer premises equipment. For example, Synchronoss's Personal Cloud provides Personal Cloud to mobile network providers as a "white-label solution" for syncing, backing up, and uploading data (e.g., contacts, photographs, videos, music, documents, messages, and/or call history) stored on users mobile phones. *See* http://synchronoss.com/products/cloud/personal-cloud-solution.

33. For example, Synchronoss provides the Synchronoss Personal Cloud product to Verizon:



Synchronoss Personal Cloud mobile application screenshot.

34. Synchronoss's Personal Cloud stores data at the mobile customer premises equipment. For example, Personal Cloud allows syncing, backing up, and uploading data (e.g., contacts, photographs, videos, music, documents, messages, and/or call history) stored at the mobile customer premises equipment. *See* http://synchronoss.com/products/cloud/personal-cloud-solution.

35. Synchronoss's Personal Cloud formats the data stored at the mobile customer premises equipment into fields by determining data fields, identifying which portions of said data correspond to a respective data field, and tagging said data. For example, data fields are used in the Synchronoss Personal Cloud to categorize uploaded data stored at a mobile phone. These data fields may include contacts, photographs, videos, music, documents, messages, and/or call history:

BAKER BOTTS L.L.P.



Synchronoss Personal Cloud mobile application screenshot.

36. As another example, Synchronoss's Personal Cloud formats the data stored on mobile phones into data fields specific to each type of data being backed up. Photograph data, for example, includes date, time, and geographic location data fields, and contact data includes data fields representing a contact's first name, last name, email address, physical address, phone number, and company.

37. Synchronoss's Personal Cloud transmits the data with a user ID from the mobile customer premises equipment across a mobile network to a server for storage. For example, the user phone number or user ID is required to access the Synchronoss Personal Cloud:

Plaintiff's Complaint for Patent Infringement

9



Synchronoss Personal Cloud mobile application screenshot.

38. Data stored on the Synchronoss Personal Cloud is associated with the user ID or phone number used to log into the Synchronoss Personal Cloud, and on information and belief, these and/or other identifiers, including IP address, account number, device ID, or session ID, are transmitted with the data between the mobile customer premises equipment to a server.

39. Synchronoss's Personal Cloud retrieves said data from said server across a mobile network in response to one of an expiration of time and request from said mobile customer premises equipment by transmitting said data to said mobile customer premises equipment. For example, Synchronoss's Personal Cloud allows a user to request and download data (e.g., contacts, photographs, videos, music, documents, messages, and/or call history) to a mobile phone or other device from the server:



Synchronoss Personal Cloud mobile application screenshot.

40. Synchronoss's Personal Cloud transmits said data to said mobile customer premises equipment by transmitting the data in more than one information signal and sequentially numbering each of said information signals. For example, sequentially-numbered TCP/IP packets are used to transmit data between mobile phones and Synchronoss Personal Cloud servers. Wi-Fi and LTE technologies also use sequentially-numbered packets to wirelessly transmit data between mobile devices and Synchronoss Personal Cloud servers.

41. Synchronoss has been aware of the '541 Patent since at least June 20, 2018.

42. Synchronoss has been aware of Dropbox since at least March 27, 2015 when it filed a lawsuit against Dropbox.

43. As will likely be shown after a reasonable opportunity for further investigation or discovery, Synchronoss investigated Dropbox's corporate structure and relationships and intellectual property before or during its lawsuit against Dropbox.

44. As will likely be shown after a reasonable opportunity for further investigation or discovery, Synchronoss was aware of the '541 Patent prior to the filing of this complaint.

45. As will likely be shown after a reasonable opportunity for further investigation or discovery, Synchronoss's infringement of the '541 Patent has been willful and deliberate.

46. As will likely be shown after a reasonable opportunity for further investigation or discovery, Synchronoss failed to conduct an investigation after learning of the '541 Patent.

47. As will likely be shown after a reasonable opportunity for further investigation or discovery, Synchronoss failed to take any remedial actions upon learning of the '541 Patent.

48. Synchronoss also indirectly infringed and continues to indirectly infringe the '541 Patent by inducing and contributing to infringement of the '541 Patent in violation of 35 U.S.C. § 271(b) and (c).

49. Synchronoss induced and continues to induce its customers and end users to infringe the '541 Patent by making, using, offering to sell, and/or selling the Synchronoss Personal Cloud. Synchronoss configures the Personal Cloud to operate in a manner that Synchronoss knows infringes the '541 Patent and encourages customers and end users to use Synchronoss's Personal Cloud in a manner that Synchronoss knows infringes the '541 Patent. For example, Synchronoss's marketing literature touts functionality of the Synchronoss Personal Cloud that falls within the scope of the above-identified claims of the '541 Patent.

50. Synchronoss contributed to and continues to contribute to the infringement of the '541 Patent by selling and offering to sell the Synchronoss Personal Cloud to network operators or service providers who incorporate the infringing Synchronoss Personal Cloud into branded cloud backup products. As described previously, Synchronoss's Personal Cloud is especially made for infringement of the '541 Patent. Synchronoss's Personal Cloud is not a staple article or commodity of commerce suitable for substantial non-infringing use. The only use of the Synchronoss Personal Cloud results in an act of direct infringement.

51. Orcinus has no adequate remedy at law for Synchronoss's acts of infringement. As a direct and proximate result of Synchronoss's acts of infringement, Orcinus has suffered and continues to suffer damages and irreparable harm. Unless Synchronoss's acts of willful infringement are enjoined by this Court, Orcinus will continue to be damaged and irreparably harmed by Synchronoss's ongoing willful infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Orcinus prays for judgment in its favor granting the following relief:

A. A finding that Synchronoss has infringed the Patent-in-Suit, either directly or indirectly by inducing others to infringe or contributing to infringement by others;

B. A finding that Synchronoss's infringement was willful and that Synchronoss's continued infringement is willful;

C. An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Orcinus for Synchronoss's infringement of the Patent-in-Suit, including both pre- and post-judgment interest and costs as fixed by the Court;

D. A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, and a corresponding award of Orcinus's reasonable attorney fees incurred in connection with the litigation; and

E. Any additional and further relief the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Civil Local Rule 3-6(a), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 10, 2018

Respectfully submitted,

BAKER BOTTS L.L.P.

/s/ *Jeremy J. Taylor*
Jeremy J. Taylor

*Attorney for Orcinus Holdings, LLC*

**BAKER BOTTS L.L.P.**
Wayne O. Stacy (SBN 314579)
wayne.stacy@bakerbotts.com
Sarah Guske (SBN 232467)
sarah.guske@bakerbotts.com
Jeremy J. Taylor (SBN 249075)

jeremy.taylor@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Kurt M. Pankratz (*pro hac vice*)
kurt.pankratz@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
Telephone: (214) 953-6584
Facsimile: (214) 661-4584

Amy K. Liang (SBN 291910)
amy.liang@bakerbotts.com
Jake W. Gallau (SBN 319656)
jake.gallau@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699